IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**LUPE A. RANGEL,**

    **Plaintiff,**

v.                                                                     CIV No. 96-1249 JP/LFG

**EL PASO NATURAL GAS
COMPANY, a foreign
corporation,**

    **Defendant.**

### MEMORANDUM OPINION AND ORDER

The subject of this Order is "Defendant's Second Motion to Dismiss or for Summary Judgment Because ERISA Preempts Plaintiff's State Law Claims, Counts II-V" (Doc. No. 8) filed January 9, 1997. After a thorough consideration of the briefs, the law, the facts, and the arguments of counsel, I conclude that this motion should be denied.

Defendant, El Paso Natural Gas Company ("EPNG") argues that all of Mr. Rangel's state law claims (Counts II-V) must be dismissed based on ERISA preemption. The issue before me is whether ERISA preempts questions surrounding the validity of a release and/or Mr. Rangel's state claims for breach of contract, intentional and/or negligent misrepresentation, intentional infliction of emotional distress, and prima facie tort.

### Background

The background of the case as alleged in the complaint is as follows.[1] Mr. Rangel began working for El Paso Natural Gas Company ("EPNG") in September, 1974 as a lab technician.

---

[1] This background section was originally set forth in my Memorandum Opinion and Order entered February 20, 1998 (Doc. No. 23).

After Mr. Rangel returned to work following a short term disability absence in January of 1994, Mr. Lambdin, Mr. Rangel's supervisor, began discriminating against him.  Mr. Rangel was the only Hispanic in his department of nine employees, and he had the second longest service with EPNG among four lab technicians.  Mr. Rangel was the lowest paid lab technician, and was "constantly subjected to racial comments and jokes."  Complaint ¶ 10.  After Mr. Lambdin falsely accused Mr. Rangel of stealing equipment, and wrote Mr. Rangel up for "minor incidents," Complaint ¶ 12, Mr. Lambdin placed Mr. Rangel on probation for ninety days.  Mr. Rangel complained to Mr. Lambdin's supervisor, Mr. Hall, about these incidents.  In April, 1994, Mr. Hall informed Mr. Rangel that he would have a new supervisor, Mr. Norvelle, and that Mr. Rangel would be transferred to a comparable position within three to six months.  Mr. Rangel was never transferred.

During January and February of 1996, EPNG notified Mr. Rangel and other employees in his department that EPNG was downsizing and that each employee would be retained based in part on a rating from each employee's supervisor.  In March of 1996, Mr. Rangel was told that his position was being eliminated and that his evaluation had not been favorable.

Based on these representations, Mr. Rangel signed a separation agreement[2] and received

---

[2]This agreement was "Exhibit A" to the "El Paso Natural Gas Company Severance Pay Plan" ("the Plan").  Section 2.8 of the Plan defines "Separation Agreement" as "[t]he agreement, in the form of Exhibit A attached hereto, which an Employee must execute in order to receive Severance Pay under this plan."  Section 3.4 of the Plan states, "No Severance Pay will be paid to any Employee unless that Employee properly executes and delivers to the Company a Separation Agreement within the applicable Time Limit and that Agreement becomes irrevocable.  Such Separation Agreement shall not be accepted by the Company unless it is executed on or after the Employee's Termination Date."  The Separation Agreement which Mr. Rangel signed states that he released EPNG "from all liabilities, demands, claims, or suits of whatsoever nature that [he] may have against" EPNG.

one year's severance pay in exchange for releasing EPNG from any potential liability. Mr. Rangel contends that the only reason he signed the agreement was because he thought his position was being eliminated as a result of the unfavorable evaluation.

Shortly after signing the Agreement, Mr. Rangel learned that his job position had not been eliminated and that in fact EPNG had brought in two new employees from other positions to perform his job duties. Mr. Rangel also discovered that Mr. Norvelle had not, in fact, prepared his evaluation.

## Analysis

ERISA states:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all state laws insofar as they may now or hereafter <u>relate to</u> any employee benefit plan....

29 U.S.C. §1144(a) (emphasis added).[3]

This language was analyzed in 1995, in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Company*, 514 U.S. 645, 115 S.Ct. 1671 (1995) ("*NY Blues*"). There, the United States Supreme Court held that New York statutes which impose surcharges on hospital rates for patients with certain medical plans (such as commercial insurers), but not for others (e.g. Blue Cross/Blue Shield) are not preempted by ERISA because those surcharges only have an indirect economic influence on employee benefit plan-choices and thus do not "relate to" employee benefit plans.

Justice Souter writing for the unanimous Court stated:

---

[3]The parties appear to be in agreement that EPNG's Plan is an "employee benefit plan." *See* Tr. of June 25, 1997 hearing at pp. 8-12.

> If "relate to" were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes preemption would never run its course, for "[r]eally, universally, relations stop nowhere," H. James, Roderick Hudson (New York ed., World's Classics 1980). But that, of course, would be to read Congress's words of limitation as mere sham, and to read the presumption against preemption out of the law whenever Congress speaks to the matter with generality. That said, we have to recognize that our prior attempt to construe the phrase "relate to" does not give us much help drawing the line here.

*New York Blues*, 514 U.S. at 655, 115 S.Ct. at 1677 (1995). Consequently, the Supreme Court decided to "go beyond the unhelpful text and the frustrating difficulty of defining [ERISA's] key terms, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.,* 514 U.S. at 656, 115 S.Ct. at 1677. The Court then reasoned that the thrust behind the preemption clause was to avoid a multiplicity of regulation in order to permit nationally uniform administration of employee benefit plans. *Id.,* 514 U.S. 657, 115 S.Ct. at 1677-1678. Thus, the Court concluded that ERISA preempts state laws that mandate employee benefit structures or their administration as well as those that provide alternate enforcement mechanisms. *Id.,* 514 U.S. at 658, 115 S.Ct 1678. Significantly, the Court stated that courts must start with a <u>presumption</u> that "Congress does not intend to supplant state law." *Id.,* 514 U.S. at 654, 115 S.Ct. at 1676. This presumption includes the "'assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Id.,* 514 U.S. at 655, 115 S.Ct. at 1676 (citations omitted).

After *NY Blues,* in *California Division of Labor Standards Enforcement v. Dillingham Construction, Inc.,* 519 U.S. 316, 117 S.Ct 832 (1997) (Scalia and Ginsberg dissenting) ("*Dillingham*"), the Supreme Court considered the applicability of ERISA preemption to a

California prevailing wage law that required the payment of prevailing wages to employees in apprenticeship programs that had not received state approval but allowed payment of lower apprenticeship wages to employees participating in state-approved programs. There, the Court reiterated the essential holding of *NY Blues* by concluding that because California's law neither made reference to or had a connection with ERISA plans, it did not "relate to" ERISA plans and was therefore not preempted. The Court reemphasized that there is an assumption that the historic police powers of the state were not supposed to be superceded by ERISA. *Id.* 117 S.Ct. at 838.

Following *Dillingham,* in *De Buono v. NYSA-ILA Medical and Clinical Services Fund,* 117 S.Ct. 1747 (1997), the Supreme Court determined that a gross receipts tax on income that New York hospitals receive for patient services is not preempted by ERISA when imposed on medical centers operated by ERISA funds. The Court noted that the tax is aimed at revenue raising, an area traditionally occupied by the states. The Court stated, "[I]n *Travelers* we confronted directly the question whether ERISA's 'relates to' language was intended to modify 'the starting presumption that Congress does not intend to supplant state law.' We unequivocally concluded that it does not." *Id.* at 1751. The Court emphasized, "Respondents therefore bear <u>the considerable burden</u> of overcoming 'the starting presumption that Congress does not intend to supplant state law.'" *Id.* at 1752 (citing to *NY Blues*, 514 U.S. at 654) (emphasis added).

Many courts have held that these recent opinions have narrowed the scope and/or turned the tide on the expansion of ERISA preemption. *See, e.g., Toumajian v. Frailey,* 135 F.3d 648 (9th Cir. 1998) (commenting that "[r]ecently, the scope of this broad "relate to" preemption was markedly narrowed" in *NY Blues*); *Cisneros v. Unum Life Insurance Company of America*, 134

F.3d 939, 944 n.3 (9th Cir. 1998) (noting "[t]he Supreme Court [in *NY Blues*] recently has narrowed the scope of ERISA's 'related to' language"); *Morstein v. National Insurance Services, Inc.*, 93 F.3d 715, 721 (11th Cir. 1996) (en banc) (stating "[in *NY Blues,*] [t]he Supreme Court ... essentially turned the tide on the expansion of the preemption doctrine ..."), *cert. denied*, *Shaw Agency v. Morstein*, 117 S.Ct. 769 (1997); *Coyne & Delaney Company v. Selman*, 98 F.3d 1457, 1469 n.14 (4th Cir.1996) (declining to follow pre-*NY Blues* decisions which relied heavily on an "expansive view of ERISA preemption" and noting "[*NY Blues*], we believe, signals a narrowing of the Court's view of ERISA preemption").

The United States Court of Appeals for the Tenth Circuit has not yet interpreted *NY Blues* although it has issued a number of ERISA preemption opinions since *NY Blues*. For example, in *Wilcott v. Matlack, Inc.*, 64 F.3d 1458 (10th Cir. 1995), the Tenth Circuit held that a Colorado negligent and false misrepresentation claim was preempted by ERISA. There, the employer allegedly had made false representations to the plaintiff regarding a disability leave of absence. The employer allegedly represented to the plaintiff that he would be permitted to take a six-week leave of absence on full salary, and that the leave would not interfere with his ability to remain employed with the company. *Id.* at 1463. The plaintiff, relying on those representations, agreed to a leave of absence, and five days after commencing his leave, was notified that he had been terminated as part of a reduction in force. *Id.* at 1460. The court concluded that the alleged misrepresentations at issue were directly related to the plan:

> The tie between these allegations and the ERISA plan is plain and substantial. Defendants' alleged misrepresentations relate directly to the nature of plaintiff's rights under the plan – i.e., whether employee disability benefits are secured by guarantees against adverse employment consequences. Further, to establish defendants' liability, plaintiff would have to show the reasonableness of his reliance on the alleged

6

>misrepresentations regarding disability-leave rights, which would require resort to the terms of the ERISA plan. Because the court's inquiry must be directed to the plan, these causes of action related to an ERISA plan and, therefore, are preempted.

*Id*. at 1464 (internal citations and quotations omitted). In contrast, the alleged representations upon which Mr. Rangel relied were totally unrelated to the Plan because they solely concerned his employer's reasons for his discharge. The alleged representations made by EPNG were that Mr. Rangel received a negative evaluation from his supervisor and his position was being eliminated. These representations are completely unrelated to the Plan, and Mr. Rangel would not need to resort to the terms of the Plan to demonstrate that these representations were false or that his reliance upon them was reasonable. Therefore, Mr. Rangel's claim would not be preempted even if the Tenth Circuit were to conclude that *NY Blues* does not affect its previous holdings regarding the scope of ERISA preemption.

Pre-*NY Blues,* the Tenth Circuit summarized the type of state law claims which at that time fell on either side of preemption:

>[L]aws that have been ruled preempted are those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee. Those that have not been preempted are laws of general application – often traditional exercises of state power or regulatory authority – whose effect of ERISA plans is incidental.

*Monarch Cement Co. v. Lone Star Indus., Inc.,* 982 F.2d 1448, 1452 (10th Cir. 1992).

Mr. Rangel's state claims are based on state laws of general applicability which have been traditionally regulated by the states, and which do not directly affect the relationships regulated under ERISA among employer, plan, participant, and fiduciary. The state law issues raised by Mr. Rangel do not produce direct regulation of EPNG's ERISA plan, or "acute, albeit indirect,

7

economic effects, by intent or otherwise, as to force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers."[4] *NY Blues*, 514 U.S. at 668. Furthermore, Mr. Rangel's claims fall outside of the three areas of concern the Supreme Court identified in *NY Blues*: the state laws at issue do not mandate employee benefit structures or their administration[5]; they do not bind employers or plan administrators to particular choices or preclude uniform administrative practice; and they do not provide alternative enforcement mechanisms for employees to obtain ERISA plan benefits. *See Coyne v. Delany Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir.1996) (summarizing the three areas identified by the Supreme Court in *NY Blues* in which ERISA was intended to preempt state law claims); *and Geweke Ford v. St. Joseph's Omni Pref. Care, Inc.*, 130 F.3d 1355, 1360 (9th Cir. 1997) (citing *Coyne's* summary of *NY Blues* and holding that state contract law claims not preempted by ERISA). In fact, Mr. Rangel's claim is not based on a denial of benefits under an ERISA plan and does not allege improper processing of benefits; therefore, it is not preempted. *See Memorial Hosp. Sys. v.*

---

[4]EPNG argues that requiring EPNG to tailor its waivers/releases to the different law governing waivers in the fifty states would have an economic effect on its plan (Tr. of Hearing held June 25, 1997 ("Tr.") at p. 20), but the mere fact that the state law has some economic impact on the plan does not require that the law be preempted. *Fuller v. Norton,* 86 F.3d 1016, 1021 (10th Cir. 1996); *and Pacificare of Oklahoma, Inc. v. Burrage*, 59 F.3d 151, 154 (10th Cir. 1995). In addition, the economic effect, if any, would be indirect and not acute.

[5]EPNG contends that preemption is justified because enforcing different states' waiver-related law would erode uniformity in plan administration (Tr. at pp. 19-20), but that argument would dictate the result that virtually all state laws be preempted by ERISA because arguably all state laws could have an indirect, albeit it remote, effect on a plan. Additionally, "the Congressional goal of securing uniform federal laws regulating employee benefit plans is not advanced by preempting state claims that are not premised on a violation of duties imposed by ERISA." *The Meadows v. Employers Health Ins.*, 47 F.3d 1006, 1010-1011 (9th Cir. 1995) (concluding that state law claims for negligent misrepresentation, estoppel, and breach of contract against health insurer were not preempted by ERISA).

*Northbrook Life Insur.,* 904 F.2d 236, 243-50 (5th Cir. 1990) (holding that ERISA does not preempt negligent representation claim because that claim "neither sought benefits under the plan nor alleged improper processing of benefits"); *Smith v. Texas Children's Hospital*, 84 F.3d 152 (5th Cir. 1996) (concluding that plaintiff's state claim for fraudulent inducement not preempted by ERISA because plaintiff did not seek disability benefits that employer owed her under its ERISA plan, but vested benefits plaintiff had acquired while employed with previous employer, but then relinquished because of defendant's alleged representations).

Finally, EPNG has not made a showing that it has "overcome <u>the considerable burden</u> of overcoming 'the starting presumption that Congress does not intend to supplant state law.'" *De Buono, supra,* 117 S.Ct. at 1752.[6]

EPNG argues that Mr. Rangel's state claims are preempted because the waiver, as part of the plan, relates to Mr. Rangel's state claims. But the proper inquiry is not whether the interpretation of the waiver provision should be governed by ERISA, but rather whether the state laws at issue are preempted by ERISA. In *Hook v. Morrison Milling Co.,* 38 F.3d 776, 785 (5th Cir. 1995), the Fifth Circuit considered the question of whether ERISA preemption hinges on a benefit plan's waiver provision, or whether it is dependent on the nature of the underlying state claims at issue. The court held:

> By focusing on the waiver, MMC turns ERISA preemption analysis on its head; it argues that Hook's cause of action is preempted because the waiver, as part of the plan, relates to Hook's claim. Instead, the appropriate question in any ERISA preemption case is whether the state law relates to an ERISA plan. 29 U.S.C. §1144(a) .... MMC's analysis would enable employers to avoid any state law simply by referring to that law in its ERISA plan. Congress clearly did not intend

---

[6]In fact, counsel for EPNG admitted that states traditionally have exercised their power in creating common law about releases  Tr. of Hearing held June 25, 1997 at p. 20.

to vest employers with such authority.

*Id.* at 785. Here, this result is particularly appropriate. The representations EPNG made to Mr. Rangel preceded his signing of the Separation Agreement and the waiver. Mr. Rangel contends that but for the alleged misrepresentations, he would not have signed the waiver. See Plaintiff's Complaint at ¶ ¶ 23 & 34. *See also Perry v. P\*I\*E Nationwide, Inc.*, 872 F.2d 157 (6th Cir. 1989) (ERISA does not preempt employees' state law claims against employer for rescission of an ERISA plan and for restitution based on fraud and misrepresentation made before employees joined plan), *cert. denied,* 493 U.S. 1093 (1990); *Wilson v. Zoellner*, 114 F.3d. 713 (8th Cir. 1997) (concluding, after an exhaustive analysis, that ERISA does not preempt suit based upon negligent misrepresentation because the potential impact of the suit on the benefit plan was too tenuous, remote or peripheral to find that the law relates to the plan).

In addition, even if the waiver provision were the focal point of the ERISA preemption analysis in this case, I still would conclude that Mr. Rangel's claims are not preempted. *See Auslander v. Helfand*, 988 F.Supp. 576, 579 (D.Md. 1997) (holding that ERISA did not preempt Maryland's common law of waiver and release because the law is of general applicability and has only indirect impact upon ERISA plans). *See also Educare Community Living Corp. –Texas v. Wilmore*, 976 F.Supp. 1041 (E.D.Texas 1997) (holding that negligence claim not preempted by ERISA, despite issue of validity of waiver provision which employee was required to sign which released employer from any negligence claim arising from workplace injury).[7]

---

[7]EPNG relies heavily on *Tobin v. Ravenswood Aluminum Corporation,* 838 F. Supp. 262 (S.D.W.Va. 1993), to support the proposition that ERISA preempts state contract law with respect to a release obtained in exchange for severance benefits. I decline to follow *Tobin.* In that case the court noted, "Plaintiffs make no attempt to invalidate the releases on grounds other than insufficient consideration. Plaintiffs, for example, do not claim the releases were fraudulently

IT IS THEREFORE ORDERED THAT defendant's Second Motion to Dismiss (Doc. No 8) is DENIED.

*[signature: James A. Parker]*
UNITED STATES DISTRICT JUDGE

---

obtained, or were involuntarily or unknowingly signed." *Id.* at 270 n.8. In contrast, in this case, Mr. Rangel claims that EPNG obtained the release by making misrepresentations.

In addition, *Tobin's* holding is now very questionable given the Supreme Court's narrowing of ERISA preemption during the five years which have elapsed since 1993.